IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01624-WYD-BNB

DAVID A. ZIGRAY,

Plaintiff,

v.

NETDELIVERY CORP., a Delaware corporation,
IDK ENTERPRISES, INC., a Delaware corporation d/b/a NETdelivery,
COMPLETE SECURITY SOLUTIONS, INC., a Delaware corporation,
PATRON SYSTEMS, INC., a Delaware corporation, and
DANIEL TWING, an individual,

Defendants.

_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE CONCERNING DIVERSITY JURISDICTION**
_____

This matter is before me on the following:

(1)   Defendants' **Motion to Dismiss for Lack of Subject Matter Jurisdiction** [Doc. # 8, filed 1/6/06];

(2)   **Plaintiff's Motion to Remove Defendant** [Doc. # 28, 3/8/06]; and

(3)   Plaintiff's **Motion for Default Judgement** [Doc. # 34, filed 3/9/06].

I respectfully RECOMMEND that the defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be GRANTED and that this action be DISMISSED for lack of subject matter jurisdiction. I further RECOMMEND that Plaintiff's Motion to Remove Defendant be DENIED AS MOOT and that the plaintiff's Motion for Default Judgement be DENIED for lack of subject matter jurisdiction.

## I. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The plaintiff filed his initial Complaint on August 22, 2005. He filed an Amended Complaint on December 17, 2005. The defendants move to dismiss for lack of subject matter jurisdiction based on a lack of complete diversity of citizenship.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).[1]

---

[1] In addition, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The defendants present a factual challenge to subject matter jurisdiction. Therefore, I do not assume that the allegations of the Amended Complaint are true, and I have wide discretion to consider evidence in order to resolve disputed jurisdictional facts. Moreover, resolution of the jurisdictional issue raised here depends solely on the citizenship of the parties. Determination of citizenship does not touch on the merits of the case. Consequently, I analyze this issue under the standards applicable to Rule12(b)(1), Fed. R. Civ. P., rather than under Rule 12(b)(6) standards. Pringle v. United States, 208 F.3d 1220, 1222 (10th Cir. 2000).

Diversity jurisdiction exists under the following circumstances:

> District and appellate courts have limited subject matter jurisdiction and may only hear cases "when empowered to do so by the Constitution and by act of Congress." To establish subject matter jurisdiction under 28 U.S.C. § 1332, a party must show that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000.

Radil v. Sanborn Western Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004) (citations omitted).

"Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof. And statutes conferring diversity jurisdiction are to be strictly construed." Penteco Corp. Ltd. Partnership - 1985A v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991) (internal quotations and citations omitted).

For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. §1332(c)(1).

> Where the corporation has its principal place of business is a question of fact to be determined by the character of the

> corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations.
>
> Where a corporation carries on its business in a number of states, no one of which is clearly the state in which its business is principally conducted, the state where a substantial part of its business is transacted and from which centralized general supervision of all of its business is exercised, is the state in which it has its principal place of business.

United Nuclear Corp. v. Moki Oil & Rare Metals Co., 364 F.2d 568, 570 (10th Cir. 1966) (internal quotations and citations omitted).

The determination of a corporation's principal place of business is to be determined based on the total activity of the company as a whole. Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 915 (10th Cir. 1993). This approach takes into consideration "a variety of factors, such as the location of the corporation's nerve center, administrative offices, production facilities, employees, etc., and it balances these factors in light of the facts of each case." Shell Rocky Mountain Production, LLC v. Ultra Resources, Inc., 415 F.3d 1158, 1162 (10th Cir. 2005).

Diversity of citizenship is determined as of the time the suit is commenced, Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426 860 (1991), and "cannot be ousted by subsequent events." Johnston v. Cordell Nat. Bank, 421 F.2d 1310, 1311 (10th Cir. 1970).

It is undisputed that the plaintiff and defendant Twing are residents of Colorado. *Complaint*, p. 9; *Motion*, Exhibit B; *Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction* (the "Response"), filed January 27, 2006, fourth consecutive page. Thus, it would appear that the Court lacked subject matter jurisdiction at the outset of this case. However, the plaintiff filed a motion to "remove" Twing from the case on March 8, 2006, arguing that he had never properly served Twing.

In an attempt to fully determine the issue of diversity of citizenship between all of the parties, I held a limited evidentiary hearing on June 13, 2006, to resolve disputed jurisdictional facts regarding the corporate defendants. Based on the evidence and testimony, I make the following findings of fact and conclusions of law:

1. The plaintiff entered into an employment contract with NETdelivery Corporation ("NETdelivery") on November 28, 2000. His employment with NETdelivery was terminated on August 19, 2002.

2. The Amended Complaint alleges breach of the employment contract. The plaintiff relies on 28 U.S.C. § 1332 (diversity) to establish this Court's jurisdiction over the action.

3. IDK Enterprises ("IDK") is a Delaware corporation. IDK acquired the assets and certain liabilities of NETdelivery through a foreclosure sale in January 2003.[2]

4. IDK purchased all of NETdelivery's intellectual property, its customer list, and its receivables. IDK continued to use the NETdelivery name because of NETdelivery's goodwill in the marketplace and because IDK continued to service NETdelivery's clients.

5. NETdelivery did not conduct any business after January 2003. NETdelivery is a defunct corporation.

6. Complete Security Solutions, Inc. ("CSSI"), is a Delaware corporation. CSSI was formed on July 28, 2004.

---

[2]When IDK acquired NETdelivery's customer contracts as an asset, it assumed as a liability the servicing of the contracts.

7. On February 24, 2005, CSSI completed a merger with IDK by purchasing all of the stock of IDK.

8. On February 25, 2005, CSSI was acquired by Patron Systems, Inc. ("Patron") when Patron purchased all of the stock of CSSI. Patron is a Delaware corporation.

9. Patron develops and sells computer software.

10. Patron employs approximately thirty individuals.

11. Patron utilizes the NETdelivery name in the same fashion that IDK utilized the NETdelivery name.

12. After February 25, 2005, Patron maintained a "mail drop" address in Chicago, Illinois, where it received mail and facsimiles. The mail and facsimiles were forwarded to Boulder, Colorado, for processing. There were no employees at the office address in Chicago. Patron began terminating the Chicago address in January or February 2006. Patron no longer maintains the Chicago address.

13. As of August 22, 2005, Patron conducted all of the following business operations in Boulder, Colorado: software development, professional services, payroll, human resources, billing, collections, general ledger, customer support, engineering, audit, and financials.

14. As of August 22, 2005, Patron had sales employees residing in California, Texas, Mississippi, and Massachusetts. In addition, the Chief Technological Officer resided in Idaho; the Chief Executive Officer resided in Pennsylvania; and the Vice President of Sales and Marketing resided in California.

15. Patron's website listed Chicago, Illinois, as Patron's "Corporate Headquarters" as of June 28, 2005. Patron's website listed Chicago, Illinois, as Patron's "Corporate Headquarters" and Boulder, Colorado as Patron's "Colorado Office" as of August 8, 2005.

16. Patron's Annual Franchise Tax Report to the State of Delaware, dated March 10, 2005, listed Chicago, Illinois, as Patron's principle place of business.

17. Patron's annual 8-K/A report to the Securities and Exchange Commission, dated December 31, 2004, provides an Illinois address as its "Address of Principal Executive Offices."

18. At the time this suit was commenced on August 22, 2005, a substantial part of Patron's business was transacted from Colorado, and the centralized general supervision of all of its business was exercised from Colorado. Therefore, Patron's principal place of business on August 22, 2005, was in Colorado.

19. At the time the plaintiff commenced this action on August 22, 2005, Patron was deemed to be a citizen of Colorado; defendant Twing was a resident of Colorado; and the plaintiff was a resident of Colorado. Therefore, at the time the plaintiff commenced this action on August 22, 2005, complete diversity of citizenship did not exist between the parties.

20. Because complete diversity did not exist at the time the plaintiff commenced this action on August 22, 2005, the Court does not have subject matter jurisdiction over this action.

I respectfully RECOMMEND that the defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be GRANTED and that this action be DISMISSED for lack of subject matter jurisdiction.

## II.  PLAINTIFF'S MOTION TO REMOVE DEFENDANT

Plaintiff seeks to dismiss defendant Twing from this action.  Because the Court does not have subject matter jurisdiction over this case, and because removal of Twing from this action would not affect the Court's subject matter jurisdiction, the motion is moot.  I respectfully RECOMMEND that Plaintiff's Motion to Remove Defendant be DENIED AS MOOT.

## III.  MOTION FOR DEFAULT JUDGEMENT

The plaintiff seeks a default judgment against defendant NETdelivery.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  Penteco Corp. Ltd. Partnership - 1985A, 929 F.2d at 1521.  Accordingly, I respectfully RECOMMEND that the Motion for Default Judgement be DENIED for lack of subject matter jurisdiction.

## IV.  CONCLUSION

IT IS RECOMMENDED that the defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be GRANTED and that this action be DISMISSED for lack of subject matter jurisdiction.

I further RECOMMEND that Plaintiff's Motion to Remove Defendant be DENIED AS MOOT.

I further RECOMMEND that the plaintiff's Motion for Default Judgement be DENIED for lack of subject matter jurisdiction.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 19, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge